Lawrence E. Henke
David L. Vicevich
Vicevich Law
3738 Harrison Ave.
Butte, MT 59701
larry@vicevichlaw.com
dave@vicevichlaw.com

FILED

AUG 2 0 2021

Tom Powers, Clerk
By_____
Deputy Clerk

Attorneys for Plaintiff

## IN THE SECOND JUDICIAL DISTRICT COURT
## STATE OF MONTANA, IN AND FOR THE COUNTY OF SILVER BOW

| | |
|---|---|
| ANNE FEENEY,<br><br>    Plaintiff,<br><br>    v.<br><br>JORDAN GREER and<br>BUTTE-SILVER BOW PRIMARY<br>HEALTH CARE CLINIC,<br>d/b/a SOUTHWEST MONTANA<br>COMMUNITY HEALTH CENTER,<br><br>    Defendants. | Case No.  DV-21-239<br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL**<br><br>KURT KRUEGER<br>Judge, Dept. 1<br><br>SUMMONS ISSUED<br>X2 |

COMES NOW the Plaintiff, Anne Feeney, by and through her counsel of record, Lawrence

E. Henke, and for its Complaint against Defendants Jordan Greer and Butte-Silver Bow Primary

Health Care Clinic, assert and allege as follows:

### Introduction

As a patient, Anne Feeney expected her doctor to treat her with competence, dignity, and

respect. Instead, Dr. Jordan Greer treated her as an object of his desire and exploited his position

of power and authority to sexually assault Anne. And if the physical groping was not shocking

enough, Dr. Greer sent Anne dozens of sexually explicit text messages and photos over the course

of more than a year of harassing and stalking her.

As a patient, Anne expected that her medical provider would not hire a doctor without conducting an adequate background check. If Butte-Silver Bow Primary Health Care Clinic had performed a reasonable background check, it would have discovered that Dr. Greer's medical license was revoked by the Alaska Board of Medical Examiners only a year before Butte-Silver Bow Primary Health Care Clinic hired him, and that he has been arrested four times in four years for charges running the gamut from driving under the influence to assault with a weapon.

## I.
## Parties

1. Plaintiff Anne Feeney ("Anne") was a resident of Butte, Silver Bow County, Montana, at all times relevant to the facts and claims set forth in this matter.

2. Defendant Butte-Silver Bow Primary Health Care Clinic is a Montana corporation with its principal place of business at 445 Centennial Ave., Butte, MT 59701.

3. Defendant Butte-Silver Bow Primary Health Care Clinic does business under the assumed name Southwest Montana Community Health Center ("Community Health").

4. Community Health can be served through its registered agent, Patrick Fleming, at 49 North Main St., Suite C, Butte, MT 59701.

## II.
## Venue and Jurisdiction

5. Venue is proper in Silver Bow County pursuant to MCA Title 25, Chapter 2, §§ 25-2-122 (1)(b), 25-2-122(2)(a) and (b), and/or 25-2-121(1)(b)(ii).

6. This Court has jurisdiction over the parties to this lawsuit because all reside in and the incidents in question took place in the State of Montana.

## III.
## Background Facts

7. Beginning in 2019, Anne was a patient of Community Health.

8.  Megan Reid, a Nurse Practitioner, initially treated Anne; by conscious decision, Anne had selected a female primary care provider.

9.  In October 2019, unsatisfied with Ms. Reid's performance, Anne requested that Community Health transferred her to a doctor.

10. She requested to be transferred to Shawna Yates ("Yates") who she was familiar with as her mother's physician.

11. Instead, Community Health said Yates was too busy and transferred Anne to Jordan Greer (a male) as her primary physician.

12. Community Health required Anne to engage in a one-hour "new patient" exam by Greer, despite Anne's protestations that she was already a patient, and this exam was unnecessary.

13. Greer conducted an exam of Anne on or about November 5, 2019, but the exam devolved into a sexual assault by Greer.

14. No female nurse was present during Greer's exam; he chose to be alone in the exam room with a female patient – Anne – and did not offer to have a nurse present.

15. During the exam, Greer engaged in inappropriate conduct, including but not limited to:

    a.  He commented that from a review of her records, she was in a vulnerable point in her life. He asked her "Is there *anything* you want?" His tone and context inferred to Anne that Greer was offering to prescribe narcotic drugs.

    b.  He commented on how attractive she was.

    c.  He said he wanted to ask her out on a date.

16. As Greer started his exam, he proceeded to touch Anne in an unnecessary manner; it was a stroking touching, not the typical medical palpation, and he touched areas of her body that were unrelated to a medical exam. For example:

      a.  Greer caressed Anne's face, commenting how attractive she was;

      b.  Greer rubbed her shoulders, and

      c.  He lingered in his touch in a manner that was inconsistent with a medical exam.

17.  During the caressing, he continued to comment on her looks, and he more aggressively suggested that he wanted to start a personal relationship with her.

18.  At this time, Anne observed that he had an obvious erection; Greer then leaned into her body pressing his erect penis against her body.

19.  Anne recoiled at this and moved away from him telling him to "stop that" – meaning his caressing and rubbing his erect penis against her thigh.

20.  Greer laughed, then casually asked Anne to lie on the exam table, which she did.

21.  As Greer palpated Anne's bare abdomen, he re-engaged verbally by further commenting on how attractive she was and how good she looked and how fit she was for a woman of her age.

22.  Greer then began sliding his hands down Anne's exposed abdomen, stroking with his fingers and sliding his hands as he reached toward her pubic area; all this while seductively suggesting that they date.

23.  Anne abruptly stopped his caressing and forcefully said he needed to stop; she said "this is not an exam; you're feeling me up" or words to that effect.

24.  Only then did Greer stopped caressing her body; he bent each of her legs at the knee and then quickly ended the purported exam.

25.  When Anne exited the exam room, the female nurse, with a concerned look, asked her if she was okay, evidencing both a recognition of the stress Anne exhibited as she was leaving and the apparent knowledge of Greer's propensity for conduct of this nature.

26.  After being assaulted by Greer in the exam room, Anne left the facility.

27. Throughout that day, and following over several days, Anne was bombarded with text messages and phone calls from Greer.

28. Greer's text messages were not medically related; he used his knowledge of Anne's confidential contact information from her health records as a means to contact her for personal reasons.

29. Greer's texts were unprofessional; he was seeking a personal relationship with a patient.

30. Greer's texts were highly personal; he used suggestive language and commentary on her personal appearance.

31. Greer's texts were lewd and provocative; he used highly personal or lascivious descriptions of biological functions (transfer of blood from his brain to his penis) as a euphemism for an erection or sex act, referring back to his erection in the exam room.

32. Greer's texts used emojis designed to garner a personal relationship or evoke sexuality.

33. Greer's text language was offensive, including but not limited to:

    a. Commenting on how attractive she was;

    b. Commenting on how he wanted to date her;

    c. Asking her for a dinner date; and

    d. Complimenting her intelligence.

34. Greer's text language was lewd, including but not limited to:

    a. He described how he wanted to transfer his blood flow again – alluding to the erect penis he pushed against her body earlier in the day;

    b. He wanted to caress her nipples;

    c. He imagined that if he stimulated her nipples they would be very erect, and

    d. All followed by flirtatious and alternatively, bizarre, emojis.

35. Recognizing that Greer was a predator, Anne responded innocuously to some of the texts to see just how far Greer would go in his behavior. Greer later included in the voluminous text messaging from Greer – the DOCTOR – to Anne – his PATIENT – a suggestion that she spank him in response to her telling him to stop this behavior.

36. During the time of this exchange Greer would mention that Community Health did not want him to be dating patients and they would need to keep their relationship secret.

37. Anne reiterated that they were not in a relationship.

38. In addition to the lewdness and consistent dating proposals, Greer also referred to Anne's recent facial injury and made strange solicitations of her to participate in a scheme where he would prescribe her narcotics for her injuries, and then they could use those narcotics to party, or words to that effect.

39. Anne refused that overture.

40. Greer's behavior reached a point where the text messaging had to stop; Anne called Greer's phone and told him to stop contacting her with these lewd texts.

41. In response, Greer asked her out for dinner; he also asked her if she was at home.

42. Later, a vehicle that, upon information and belief belonged to Greer, was observed parked outside Anne's house late in the evening. Anne had never shared her home address with Greer; it was only available from her confidential medical records.

43. Anne's neighbor notified Anne that she saw the vehicle believed to be Greer's circling the block, parking at different places on the street around her house, and seemingly watching the house.

44. Greer escalated his stalking and harassment of Anne in November 2019, when he shared a provocatively posed picture of him, scantily clad in swim briefs in front of a hot tub and squeezing his nipples (see below).



45. This was the final straw and Anne terminated her relationship with Community Health.

46. She went to Community Health to retrieve her medical records, and those of her mother and Bill so that she could seek her medical care from a professional provider.

47. While at Community Health getting her records in January 2020, she informed Yates, who was now the CEO for Community Health, that she was terminating her association with Community Health because of Greer and his sexual advances.

48. Yates refused to accept Anne's complaint; she held up her hand and said "I don't want to hear about it" as she walked away.

49. Anne was subsequently contacted by Greer who informed her that Community Health was "sending me back to rehab again."

50. The "again" comment sparked a feeling of concern; Anne learned through a co-worker that Greer had a criminal history from Alaska prior to being hired by Community Health:



**Criminal charges against Greer in Alaska:**

- Disorderly Conduct
- Resisting Arrest
- Driving Under the Influence
- Possession of weapon while intoxicated
- Assault
- Criminal Mischief
- Assault with a weapon
- Reckless firing of a weapon

51. In addition, Greer was under investigation by the Alaska Board of Medical Examiners before being hired by Community Health, and he voluntarily surrendered his license to avoid prosecution/administrative penalty.



From the web site of the Alaska Department of Commerce, professional licensing:
https://www.commerce.alaska.gov/cbp/main/search/professional

52. Greer had first entered into a Consent Agreement on February 11, 2016 to have his license suspended for "several criminal and civil matters, related to the excessive use of alcohol."[1]

53. The criminal matters, which all could have been discovered with a background check, referred to in the February 11, 2016 Consent Agreement include:

- **August 18, 2013:**   Possession of a weapon while intoxication
  Driving under the influence
- **December 9, 2013:**   Resisting arrest
  Disorderly conduct
- **September 8, 2014:**   Criminal mischief
  Assault

54. On April 26, 2016, Greer agreed to a suspension of his Alaska medical license.[2]

55. While suspended from the practice of medicine, Greer continued his criminal ways:

- **January 25, 2017:**   Assault with a deadly weapon
  Assault
  Reckless discharge of a firearm

56. Finally, on February 2, 2017, surrendered his Alaska medical license, making him no longer allowed to practice medicine in Alaska.[3]

57. After learning this information, Anne was informed by Greer in mid-2020 that he was going to go to Florida for rehab or recovery. This alleviated her immediate concerns and she wished him well.

58. In August 2021, Anne was working at her job as a Pharmacist; she took a call-in prescription from a physician – the caller was Greer.

59. Anne was shocked that (i) Greer was back in Montana, and (ii) that Community Health had re-employed him.

---

[1] Consent Agreement, February 11, 2016, attached as Exhibit 1.
[2] Voluntary Suspension of License, April 26, 2016, attached as Exhibit 2.
[3] Surrender of License, February 2, 2017, attached as Exhibit 3.

60. After Anne identified herself per the store policy for call-in prescriptions, Greer deviated from the prescription, and he asked Anne out for a date – Again!

61. Anne immediately hung up the phone.

62. After she got off the phone, the pharmacy technician asked Anne what was wrong; she relayed that she had been contacted by Greer who had previously acted inappropriately to her.

63. The pharmacy technician showed Anne information she had found by Google search regarding Greer, including his mug shot and criminal history.

64. The pharmacy technician also noted that it was known in the Butte medical community that Greer was a "puke" and a "creep."

### IV.
### Claims and Causes of Action

### Count 1 – SEXUAL ASSAULT BY JORDAN GREER

65. Plaintiff realleges paragraphs 1-64 as though fully set forth herein.

66. Greer purposely or knowingly made physical contact of an insulting or provoking nature with Anne when he exceeded the limits of a medical exam in the manner he touched her.

67. Anne has suffered damages in an amount to be proven at trial, but generally consisting of emotional distress related to Greer's conduct, included embarrassment, fear, sleeplessness, mistrust of authority, and anxiety.

68. Greer made sexual contact with Anne by touching of her intimate parts in order to knowingly or purposely humiliate, harass, or degrade her.

69. Greer made sexual contact with Anne by touching of her intimate parts in order to knowingly or purposely arouse or gratify his own sexual response and desire, or to gratify Anne's own sexual response or desire..

70. Anne has suffered damages due to Greer's sexual assault of her in an amount to be proven at

trial, but generally consisting of emotional distress related to Greer's conduct, included embarrassment, fear, sleeplessness, mistrust of authority, and anxiety

## Count 2 – ASSAULT BY JORDAN GREER

71. Plaintiff realleges paragraphs 1-70 as though fully set forth herein.

72. Greer purposely or knowingly made physical contact of an insulting or provoking nature with Anne when he exceeded the limits of a medical exam in the manner he touched her.

73. Anne has suffered damages due to Greer's assault of her in an amount to be proven at trial, but generally consisting of emotional distress related to Greer's conduct, included embarrassment, fear, sleeplessness, mistrust of authority, and anxiety.

## Count 3 – STALKING BY JORDAN GREER

74. Plaintiff realleges paragraphs 1-73 as though fully set forth herein.

75. Greer's multiple times driving by Anne's house when she had not provided him with her address created a course of conduct by Greer.

76. Greer purposely or knowingly engaged in a course of conduct direct at Anne.

77. Greer knew or should have known the course of conduct would cause a reasonable person to fear for the person's own safety or the safety of a third person.

78. Greer knew or should have known the course of conduct would cause a reasonable person to suffer other substantial emotional distress.

79. Anne has suffered damages due to Greer's stalking of her in an amount to be proven at trial, but generally consisting of emotional distress related to Greer's conduct, included embarrassment, fear, sleeplessness, mistrust of authority, and anxiety.

## Count 4 – INVASION OF PRIVACY BY JORDAN GREER
### (Use of Telephone to Harass)

80. Plaintiff realleges paragraphs 1-79 as though fully set forth herein.

81. Anne had a reasonable expectation of privacy that she could provide her phone number to Community Health without Greer calling her for non-treatment related purposes.

82. Greer wrongfully intruded on Anne's private activities by calling her and texting her on the telephone and interrupting her peace and solitude, for the purpose of soliciting a date, which was not the medical purpose for which Anne provided Community Health with her phone number.

83. The manner of Greer's wrongful intrusion into Anne's private activities was outrageous and caused her mental suffering, shame, and humiliation.

84. The manner of Greer's wrongful intrusion would be outrageous and cause mental suffering, shame, and humiliation to any person of ordinary sensibilities.

85. Anne has suffered damages due to Greer's invasion of her privacy in an amount to be proven at trial, but generally consisting of emotional distress related to Greer's conduct, included embarrassment, fear, sleeplessness, mistrust of authority, and anxiety.

### Count 5 – INVASION OF PRIVACY BY JORDAN GREER
### (Use of HIPAA-protected Information to Harass by Phone and to Stalk)

86. Plaintiff realleges paragraphs 1-85 as though fully set forth herein.

87. Anne had a reasonable expectation of privacy that she could provide her phone number and address to Community Health without Greer calling her for non-treatment related purposes or slowly driving by her house.

88. The Health Insurance Portability and Accountability Act (HIPAA) requires health care providers to protect the confidentiality of protected health information, including phone numbers and addresses of patient.

89. HIPAA requires that health care providers only use confidential and protected health information for legitimate, treatment related purposes.

90. Greer wrongfully intruded on Anne's private activities by using her HIPAA-protected phone

number to call her.

91. Greer wrongfully intruded on Anne's private activities by using her HIPAA-protected address to stalk her by driving slowly past her house.

92. The manner of Greer's wrongful intrusion into Anne's private activities was outrageous and caused her mental suffering, shame, and humiliation.

93. The manner of Greer's wrongful intrusion would be outrageous and cause mental suffering, shame, and humiliation to any person of ordinary sensibilities.

94. Anne has suffered damages due to Greer's invasion of her privacy in an amount to be proven at trial, but generally consisting of emotional distress related to Greer's conduct, included embarrassment, fear, sleeplessness, mistrust of authority, and anxiety.

**Count 6 – NEGLIGENT INFLICTION OF EMOTION DISTRESS BY JORDAN GREER**

95. Plaintiff realleges paragraphs 1-94 as though fully set forth herein.

96. Greer acted negligently in his treatment of Anne.

97. Greer's actions were the cause of Anne's emotional distress.

98. Anne has suffered and continues to suffer severe emotional distress as a result of Greer's actions, including but not limited to, embarrassment, mental anguish, sleeplessness, anxiety, and fear.

99. Anne's emotional distress is the reasonably foreseeable consequence of Greer's negligent actions.

**Count 7 – NEGLIGENT HIRING BY COMMUNITY HEALTH
(Initial Hiring After Alaska License Surrendered)**

100. Plaintiff realleges paragraphs 1-99 as though fully set forth herein.

101. Every employer owes a common law duty to exercise due care in the employment of employees.

102. Medical providers, particularly, must take reasonable care in hiring and supervising doctors

and this duty necessarily includes the conduct of background checks and reference checks prior to employment.

103. When Community Health hired Greer, it had a duty to its patients to ensure that hiring Greer would allow the patients to obtain competent medical care without fear of being sexual assaulted, stalked, or having their privacy invaded.

104. A minimal effort to conduct a background check would have revealed that Greer had surrendered his license to practice medicine only a year before Community Health hired him.

105. Community Health breached that duty by failing to conduct a proper background check, or if it did conduct a background check, it failed to discover or properly interpret Greer's background prior to hire.

106. Community Health's breach has caused damage and injury to Anne.

### Count 8 – NEGLIGENCE FOR FAILURE TO PROTECT CONFIDENTIAL HEALTH INFORMATION BY COMMUNITY HEALTH

107. Plaintiff realleges paragraphs 1-106 as though fully set forth herein.

108. HIPAA requires health care providers to protect the confidentiality of protected health information, including phone numbers and addresses of patient.

109. HIPAA requires that health care providers only use confidential and protected health information for legitimate, treatment related purposes.

110. Community Health owed a duty to Anne as its patient, to protect her confidential patient information.

111. Community Health breached that duty when it let a predator (Greer) have access to her HIPAA-protected phone number and address, which Greer then used to harass, stalk, and invade the privacy of Anne.

112. Community Health's breach has caused damage and injury to Anne.

## Count 9 – NEGLIGENT SUPERVISION BY COMMUNITY HEALTH

113. Plaintiff realleges paragraphs 1-112 as though fully set forth herein .

114. Community Health had a duty to its patients to supervise the activities of its doctors, to make sure their interactions with patients were appropriate and their conduct in align with clinic policies and procedures.

115. Community Health breached its duty to supervise Greer and keep its patients safe when it failed to supervise the activities of Greer.

116. Community Health's breach of its duty to supervise Greer and protect its patients has a causal link to the harm suffered by Anne.

117. Had Community Health properly supervised Greer while treating patients it would have learned of his proclivity for inappropriate treatment of female patients.

118. Due to Community Health's breach of its duty to protect its patients, Anne has suffered damages.

## Count 10 – NEGLIGENT RETENTION BY COMMUNITY HEALTH
### (Continuing to Employ After Report of Sexual Assault)

119. Plaintiff realleges paragraphs 1-118 as though fully set forth herein .

120. Every employer owes a common law duty to exercise due care in the continued employment of employees.

121. Medical providers, particularly, must take reasonable care in hiring, supervising, and retention of doctors.

122. This duty includes investigating reports of misconduct by doctors, including sexual assault of a patient.

123. Community Health breached that duty by failing to investigate Anne's report to Yates of Greer sexual assaulting her.

124. Due to Community Health's breach of care to protect its patients, Anne has suffered damages.

## V.
## Exemplary Damages

125. Plaintiff realleges paragraphs 1-124 as though fully set forth herein.

126. Greer acted with actual malice and/or actual fraud in sexual assaulting, stalking, invading Anne's privacy, and causing her emotional distress, entitling Anne to punitive damages under M.C.A. § 27-1-221.

127. Community Health acted with actual malice and/or actual fraud when it hired Greer without conducting a background check; provided him with access to confidential records which allowed him to stalk, invading Anne's privacy, and cause her emotional distress; and retained Greer after learning he had sexually assaulted Anne, entitling Anne to punitive damages under M.C.A. § 27-1-221.

### Prayer for Relief

Wherefore, Plaintiff prays for relief as follows:

A.   An award of compensatory damages for each and every claim;

B.   An award of punitive damages in an amount sufficient to discourage Greer from using his position of power as a doctor to sexually assault, harass, and stalk his patients;

C.   An award of punitive damages in an amount sufficient to discourage Butte-Silver Bow Primary Health Care Clinic from failing to conduct background checks on doctors, from failing to supervise its doctors, and for retaining doctors on staff after receiving sexual assault reports;

D.   An award of attorney fees and costs as allowed by statute or in equity; and

E.   For any other relief the Court deems just under the circumstances.

DATED this 20th day of August, 2021.

/s/  *Lawrence E. Henke*
LAWRENCE E. HENKE

## DEMAND FOR JURY TRIAL

Comes now the Plaintiff, by and through its counsel, and hereby demands a jury trial.

DATED this 20th day of August, 2021.

/s/  *Lawrence E. Henke*
LAWRENCE E. HENKE

STATE OF ALASKA
DEPARTMENT OF COMMERCE, COMMUNITY AND ECONOMIC DEVELOPMENT
DIVISION OF CORPORATIONS, BUSINESS AND PROFESSIONAL LICENSING
BEFORE THE ALASKA STATE MEDICAL BOARD

In the Matter of:                                    )
                                                     )
Jordan H. Greer, DO                                  )
                                                     )
Respondent                                           )
Case No. 2015-001617

## CONSENT AGREEMENT

IT IS HEREBY AGREED by the Department of Commerce, Community and Economic Development, Division of Corporations, Business and Professional Licensing (Division) and Jordan H. Greer, DO (Respondent) as follows:

1) **Licensure.** Respondent is currently licensed as an Osteopathic Physician in the State of Alaska and holds License number, MED O 2266. This license was first issued on June 5, 1987, and lapsed on December 31, 2014.

2) **Admission/Jurisdiction.** Respondent admits and agrees that the Alaska State Medical Board ("Board") has jurisdiction over the subject matter of her license in Alaska and over this Consent Agreement.

3) **Admission/Facts.** Respondent admits to the following facts:

a) On December 6, 2013, Respondent pled guilty to Driving Under the Influence (of alcohol) and failed to report the criminal conviction to the Board, within 30 days of the effective date, as required in regulation. This is a violation of unprofessional conduct regulations, specifically, 12 AAC 40.967(26)(A).

b) On January 9, 2015, Respondent pled guilty to Criminal Mischief – Property Damage $250-$749, and failed to report the criminal conviction to the Board, within 30 days of the effective date, as required in regulation. This is a violation of unprofessional conduct regulations, specifically, 12 AAC 40.967(26)(A).

c) On February 9, 2015, Respondent self-reported he had been practicing medicine in Alaska, after his physician license lapsed. Respondent's license lapsed on December 31, 2014,

Department of Commerce, Community and Economic Development
Division of Corporations, Business and Professional Licensing
550 West 7th Avenue, Suite 1500
Anchorage, Alaska 99501-3567
Telephone 907-269-8160 Fax 907-269-8195

PLAINTIFF'S
EXHIBIT
4

Department of Commerce, Community and Economic Development
Division of Corporations, Business and Professional Licensing
550 West 7ᵗʰ Avenue, Suite 1500
Anchorage, Alaska 99501-3567
Telephone 907-269-8160 Fax 907-269-8195

1   and Respondent practiced from January 21, 2015 to February 9, 2015. The practice of
2   medicine with a lapsed license is a violation of unprofessional conduct regulations, specifically,
3   12 AAC 40.967(6).

4         d) On September 1, 2015, Respondent was contacted by the Division, on behalf of the
5   Board. Respondent was informed of an investigation into reporting violations, and concerns
6   about his ability to safely practice medicine. In addition to the criminal convictions,
7   Respondent had several criminal and civil matters, related to the excessive use of alcohol,
8   which were dismissed by the courts. Alaska Statute 08.64.325(a)(8)(B) addresses a practitioner
9   who has demonstrated an addiction to, severe dependency on, or habitual overuse of alcohol or
10  other drugs that impairs the licensee's ability to practice safely, and 12 AAC 40.967(18)(B)
11  addresses a practitioner using alcohol or other drugs that is illegal under state of federal law.

12        e) Respondent asserts the civil and criminal incidents during 2013 and 2014 (conviction
13  in 2015), and his use of alcohol, were not related to his practice of medicine. The Board has
14  confirmed Respondent resigned from his practice group in August 2013; Respondent did not
15  have any adverse action against his hospital privileges, in any jurisdiction; and neither the
16  hospital, nor the physician's group employing Respondent, received any complaints related to
17  medical care Respondent provided to patients.

18        f) On September 9, 2015, Respondent agreed to contact the Alaska Physician Health
19  Committee Program and follow the program recommendations. Respondent voluntarily
20  underwent an evaluation by an addiction expert, who diagnosed alcohol use disorder, and
21  recommended abstinence from alcohol and further assessment at a chemical dependency
22  treatment center specializing in health care professionals. The expert recommended
23  Respondent follow any recommendations from the treatment center; the expert
24  recommendation was subsequently reviewed, and supported, by a Physician Board Member.

25        g) On December 2, 2015, Respondent reiterated his position that his personal use of
26  alcohol is not related to his practice of medicine; however, Respondent agreed to abstinence
27  and the assessment recommended by the expert, and supported by the Board. Respondent
28  agreed he will follow the recommendations of an assessment, and the Board agreed Respondent
29  will be allowed to practice, and complete the assessment within 60 days after adoption of a
30  Consent Agreement. After one year, if Respondent demonstrates to the Board's satisfaction, he

1  can safely practice; Respondent will be allowed to request modifications of the terms and
2  conditions of the Consent Agreement.

3      h) Respondent admits that as a result of the above facts, grounds exist for possible
4  suspension, revocation, or other disciplinary sanctions of his license pursuant to AS 08.01.075,
5  AS 08.64.331(a), AS 08.64.326(a)(7), AS 08.64.326(a)(8)(B), and 12 AAC 40.967(6),
6  12 AAC 40.967(18)(B) and 12 AAC 40.967(26)(A).

7      **4) Formal Hearing Process.** It is the intent of the parties to this Consent Agreement to
8  provide for the compromise and settlement of all issues addressed in Paragraph 3 (above) that
9  could be raised by an Accusation to revoke, suspend, or impose disciplinary sanctions against
10  Respondent's license through a formal hearing process.

11      **5) Waiver of Rights.** Respondent understands he has the right to consult with an attorney
12  of his own choosing and has a right to an administrative hearing on the facts in this case.
13  Respondent understands and agrees that by signing this Consent Agreement, Respondent is
14  waiving his rights to counsel and to a hearing. Further, Respondent understands and agrees that
15  he is relieving the Division of any burden it has of proving the facts admitted above.
16  Respondent further understands and agrees that by signing this Consent Agreement he is
17  voluntarily and knowingly giving up his right to present oral and documentary evidence, to
18  present rebuttal evidence, to cross-examine witnesses against Respondent, and to appeal the
19  Board's decision to Superior Court.

20      **6) Effect of Non-Acceptance of Consent Agreement.** Respondent and the Division agree
21  that this Consent Agreement is subject to the approval of the Board. They agree that, if the
22  Board rejects this Consent Agreement, it will be void, and an Accusation may be filed. If this
23  Consent Agreement is rejected by the Board, it will not constitute a waiver of Respondent's
24  right to a hearing on the matters alleged in an Accusation and the admissions contained herein
25  will have no effect. Respondent agrees that, if the Board rejects this Consent Agreement, the
26  Board may decide the matter after a hearing, and its consideration of this Consent Agreement
27  shall not alone be grounds for claiming that the Board is biased against Respondent, that it
28  cannot fairly decide the case, or that it has received ex parte communication.

29      **7) Consent Agreement, Decision, and Order.** Respondent agrees that the Board has the
30  authority to enter into this Consent Agreement and to issue the following Decision and Order.

Department of Commerce, Community and Economic Development
Division of Corporations, Business and Professional Licensing
550 West 7th Avenue, Suite 1500
Anchorage, Alaska 99501-3567
Telephone 907-269-8160 Fax 907-269-8195

## PROPOSED DECISION AND ORDER

IT IS HEREBY ORDERED that the license issued to Respondent is under probation. This license shall be subject to the following terms and conditions of license probation.

**A. Duration of Probation**

Respondent's license shall be on probation for three (3) years from the effective date of this Order. If Respondent fully complies with all of the terms and conditions of this license probation, the probationary period will end as conditioned under this Order. The three (3) year probationary period will not be reduced by any period in which Respondent does not hold an active license in Alaska.

**B. Violation of Agreement**

If Respondent fails to comply with any term or condition of this Consent Agreement, the Division may enforce this agreement by immediately suspending Respondent's license, without an additional order from the Board or without a prior hearing, for a violation of this agreement. In addition, any suspended portion of the civil fine will be immediately due.

If Respondent's license is suspended under this paragraph, as provided above, he will be will be entitled to a hearing, on an expedited basis, regarding the issue of the suspension. If Respondent's license is suspended, he will continue to be responsible for all license requirements pursuant to AS 08.64.

**C. Compliance with Laws**

Respondent shall obey all Federal laws and State statutes and regulations governing his license, or relating to his fitness to practice.

**D. Authorization**

Within 10 calendar days of a request by the Board's agent, Respondent will sign all authorizations necessary for the release of information required by this Consent Agreement.

**E. Good Faith**

All parties agree to act in good faith in carrying out the stated intentions of this Consent Agreement.

Department of Commerce, Community and Economic Development
Division of Corporations, Business and Professional Licensing
550 West 7th Avenue, Suite 1500
Anchorage, Alaska 99501-3567
Telephone 907-269-8160 Fax 907-269-8195

## F. Address of the Board

All required reports or other communication concerning compliance with this Consent Agreement shall be addressed to:

> Attn:  Probation Monitor, Medical Board
> Division of Corporations, Business and Professional Licensing
> 550 West 7th Avenue, Suite 1500
> Anchorage, Alaska 99501-3567
> (907)269-8437 Fax (907) 269-8195

It is the responsibility of Respondent to keep the Board's agent advised in writing at all times of his current mailing address, physical address, telephone number, current employment, and any change in employment.

Failure to provide notice of any changes within 10 calendar days will constitute grounds for suspension of his license in accordance with paragraph 'B' above.

## G. Periodic Interview with the Board

While under license probation and upon the request of the Board, or its agent, Respondent shall report in person to the Board, or its agent, to allow a review of her compliance with this probation.  Respondent shall be excused from attending any interview only at the discretion of the person requesting the interview.

## H. Civil Fine

Respondent shall pay a fine of three thousand dollars ($3,000.00) in cash, certified check, or money order payable to the "State of Alaska" within one hundred and eighty (180) days after this Consent Agreement is accepted by the Board.

All payments required by this Consent Agreement shall be addressed to:

> Angela G. Birt, Chief Investigator
> Division of Corporations, Business and Professional Licensing
> 550 West 7th Avenue, Suite 1500
> Anchorage, Alaska 99501-3567

## I. Inpatient Assessment/Evaluation

Within 60 days of the effective date of this Consent Agreement, Respondent agrees to attend and satisfactorily complete an in-patient assessment at a facility approved by the Board. Respondent agrees to authorize release of the assessment and recommendations from the in-patient program, to the Board or Board's agent.   After completion of the assessment,

Department of Commerce, Community and Economic Development
Division of Corporations, Business and Professional Licensing
550 West 7th Avenue, Suite 1500
Anchorage, Alaska 99501-3567
Telephone 907-269-8160 Fax 907-269-8195

1  Respondent agrees to comply with recommendations of the assessment, and shall provide the
2  Board or the Board's agent satisfactory evidence, in writing from the in-patient program, that
3  Respondent is fit to practice medicine safely.

4        All costs are the responsibility of the Respondent.

5     **J. Consume No Alcohol or Controlled Drugs**

6        While under license probation, Respondent shall consume no alcohol or controlled
7  drugs whatsoever, including foods, medicines, and other substances containing controlled drugs
8  or alcohol. However, if Respondent is hospitalized and receiving inpatient care, or is receiving
9  outpatient care for a medical/dental condition that cannot be adequately treated without
10 medicines containing controlled drugs, Respondent must inform his treating health care
11 provider of his history of alcohol use. Respondent may then take drugs on his health care
12 provider's written prescription, in the prescribed dosage for the prescribed duration, and for the
13 prescribed purpose. The Board's agent will be notified of any prescription for controlled drugs
14 at the time Respondent's receives it, and a copy of the prescription will be promptly sent to the
15 Division. Further, Respondent shall not self-medicate with any other prescription drug. If a
16 condition exists which requires the use of such a drug, it must be prescribed by Respondent's
17 health care provider.

18        All costs are the responsibility of the Respondent.

19    **K. Urinalysis and Blood Tests**

20        While under license probation, Respondent shall submit to random substance testing
21 (urinalysis, blood, breath, and/or hair tests), as may be ordered by the Board or Board's agent.
22 All urinalysis shall be provided in a controlled (witnessed) setting, and shall be subjected to a
23 comprehensive screening for drugs and alcohol. The test method is at the discretion of the
24 Division.

25        Respondent must obtain the random screening test no later than 2 hours after being
26 instructed to do so. Failure to respond as instructed is a violation of this Consent Agreement.
27 If Respondent is not able to provide the relevant samples within the 2 hours, Respondent will
28 immediately notify the Board's agent, and has the burden of showing why compliance was not
29 possible.

30        All costs are the responsibility of the Respondent.

Department of Commerce, Community and Economic Development
Division of Corporations, Business and Professional Licensing
550 West 7th Avenue, Suite 1500
Anchorage, Alaska 99501-3567
Telephone 907-269-8160 Fax 907-269-8195

## L. Reprimand

It is hereby ordered that a public reprimand be issued against licensee, Jordan H. Greer, DO, for failing to properly report two criminal convictions, to the Alaska Medical Board, as required in regulation; and for practicing for two weeks, while his physician license in Alaska was lapsed.

//
//
//

Department of Commerce, Community and Economic Development
Division of Corporations, Business and Professional Licensing
550 West 7th Avenue, Suite 1500
Anchorage, Alaska 99501-3567
Telephone 907-269-8160 Fax 907-269-8195

1    IT IS HEREBY FURTHER ORDERED that this Decision and Order shall take effect
2    immediately upon its adoption by the Board and is a public record of the Board and the State of
3    Alaska.  The State may provide a copy of it to any person or entity, professional licensing
4    board, federal, state, or local government, or other entity making a relevant inquiry.

5        The action taken by the Board in this Consent Agreement will be reported to the
6    Federation of State Medical Boards, the National Practitioner Data Bank, and other entities as
7    required by law.

8

9        DATED this _____ day of December 2015, at Anchorage, Alaska.

10
11                        CHRIS W. HLADICK, COMMISSIONER
12
13
14                    By: _____
15    ELR              Angela G. Birt, Chief Investigator for
16                     Janey L. Hovenden, Director
17                     Division of Corporations, Business and
18                     Professional Licensing
19
20        I, Jordan H. Greer, DO, have read the Consent Agreement, understand it, and agree to
21    be bound by its terms and conditions.
22
23    DATED: 31 December 2015        Jordan H Gree DO
24                                   Jordan H. Greer, DO
25
26        SUBSCRIBED AND SWORN TO before me this 31st       day of
27    December              , 2016, at Seattle            , Alaska. WA
28
29
30        SEAL                       _____
31                                   Notary Public in and for _____
32
33        CYLE WEBB
34        Notary Public                Notary Printed Name
35        State of Washington          My commission expires:
36        Commission Expires June 25, 2019

CONSENT AGREEMENT
Jordan H. Greer, DO
2015-000817
Page 8

d REVISED 11/26/12

Department of Commerce, Community and Economic Development
Division of Corporations, Business and Professional Licensing
550 West 7th Avenue, Suite 1500
Anchorage, Alaska 99501-3567
Telephone 907-269-8160 Fax 907-269-8195

1
2
3
4
5
6
7
8
9
10
11
12

**STATE OF ALASKA**
**DEPARTMENT OF COMMERCE, COMMUNITY AND ECONOMIC DEVELOPMENT**
**DIVISION OF CORPORATIONS, BUSINESS AND PROFESSIONAL LICENSING**
**BEFORE THE ALASKA STATE MEDICAL BOARD**

In the Matter of:                                )
                                                 )
Jordan H. Greer, DO                              )
                                                 )
<u>Respondent</u>                                )
Case No.  2015-001617

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33

<u>**ORDER**</u>

The Medical Board for the State of Alaska, having examined the Consent Agreement and Proposed Decision and Order, Case No. 2015-001617, Jordan H. Greer, license number MED O 2266, adopted the Consent Agreement and Decision and Order in this matter.

This Consent Agreement takes effect immediately upon signature of this Order in accordance with the approval of the Board.

The Division may enforce the Consent Agreement by immediately suspending Respondent's license, without an additional order from the Board or without a prior hearing, for a violation of the Consent Agreement.

DATED   this   11ᵗʰ   day   of   February   , 2016,   at   Ketchikan   , Alaska.

ALASKA STATE MEDICAL BOARD

By: _____
        Board President

<div style="writing-mode: vertical">State of Alaska
Department of Commerce, Community and Economic Development
Division of Corporations, Business and Professional Licensing
550 West 7ᵗʰ Avenue, Suite 1500
Anchorage, Alaska 99501-3567
Telephone 907-269-8160 Fax 907-269-8195</div>

CONSENT AGREEMENT
Jordan H. Greer, DO
2015-001617
Page 9

ORM REVISED 11/26/12



**STATE OF ALASKA**
**DEPARTMENT OF COMMERCE, COMMUNITY & ECONOMIC DEVELOPMENT**
**DIVISION OF CORPORATIONS, BUSINESS AND PROFESSIONAL LICENSING**
**BEFORE THE ALASKA STATE MEDICAL BOARD**

VOLUNTARY SUSPENSION OF LICENSE
Case Number 2016-000255

I, Jordan H. Greer, Osteopathic Physician, voluntarily agree to suspend my Alaska Medical License MED-O-2266, which was first issued to me on June 5, 1987, and will lapse, unless renewed, on December 31, 2016.

I am agreeing to the voluntary suspension of my license at this time with the understanding that the Division of Corporations, Business and Professional Licensing (Division) is monitoring the terms of my license probation under Case Number 2016-000255, on behalf of the Alaska State Medical Board (Board) and has received by an assessment from my health care provider (Talbot Recovery Campus) recommending that I cease the practice of medicine and seek professional treatment.

I understand that my Alaska license will remain suspended and I agree to stop practicing until the Division has received documentation I have completed the recommended course of treatment and have been deemed fit to resume practice; to the satisfaction of the Alaska Medical Board pursuant to Alaska Statute (AS) 08.64. I understand that during the period my Alaska license is suspended I must remain in compliance with all licensing requirements as required under AS 08.64. If I make a request to vacate the suspension of my license and I am denied by the Board, I have the right to a hearing pursuant to AS 44.62 of the Administrative Procedures Act (APA).

I am agreeing to the voluntary suspension of my medical license of my own free will. I am not under the influence of any medicine or other drugs that would affect my ability to think clearly and rationally. No promises or threats have been made to me by anyone to make me sign this document.

Jordan H. Greer

Date: 26 April 2016

SUBSCRIBED AND SWORN TO before me this 26th day of April, 2016, at Kotzebue, Alaska.

SEAL

SUSAN K COLLINS
Notary Public, State of Alaska
My Commission Expires
March 29, 2020

AGB

Notary Public

Susan K Collins
Notary Printed Name
My commission expires: 3-29-20

State of Alaska
Department of Commerce, Community & Economic Development
Division of Corporations, Business and Professional Licensing
550 West 7th Avenue, Suite 1500
Anchorage, Alaska 99501-3567
(907) 269-8160 Fax (907) 269-8195



PLAINTIFF'S EXHIBIT 2

STATE OF ALASKA

DEPARTMENT OF COMMERCE, COMMUNITY AND ECONOMIC DEVELOPMENT

DIVISION OF CORPORATIONS, BUSINESS AND PROFESSIONAL LICENSING

BEFORE THE STATE MEDICAL BOARD

In the Matter of:                    )
                                     )
Jordan H. Greer, DO          )
                                     )
Respondent                     )
Case No. 2016-000255

## ORDER

The Medical Board for the State of Alaska, having examined the Voluntary Suspension of License by Jordan H. Greer, DO, license MED O 2266, in case number 2016-000255, hereby adopted the Voluntary Suspension of License in this matter.

This License Suspension takes effect immediately upon signature of this Order in accordance with the approval of the Board.

DATED this 5ᵗʰ day of ___ May ___ , 2016 at ___ Soldotna ___, Alaska.

ALASKA STATE MEDICAL BOARD

By: _____
Grant T. Roderer, M.D.
Board President

<div align="center">

**STATE OF ALASKA**
**DEPARTMENT OF COMMERCE, COMMUNITY & ECONOMIC DEVELOPMENT**
**DIVISION OF CORPORATIONS, BUSINESS AND PROFESSIONAL LICENSING**
**BEFORE THE ALASKA STATE MEDICAL BOARD**

</div>

<div align="center">

SURRENDER OF LICENSE
Case Number 2016-000255

</div>

I, Jordan H. Greer, Osteopathic Physician, voluntarily agree to suspend my Alaska Medical License MEDO2266, which was first issued to me on June 5, 1987, and lapsed on December 31, 2016.

I am surrendering my above license at this time with the understanding that the Division of Corporations, Business and Professional Licensing (Division) is conducting an active investigation under Case Number 2016-000255, on behalf of the Alaska State Medical Board (Board), concerning my failure to comply with an order of the Board. I acknowledge the above action provide grounds for suspension, revocation or other disciplinary sanctions of my license pursuant to Alaska Statute (AS) 08.01.075, AS 08.64.326(a)(7), and AS 08.64.326(a)(8)(B).

I understand that as a result of this license surrender, I cannot practice as an Osteopathic Physician in the State of Alaska, and will not be able to do so until I have the approval of the board. I further understand that before my license to practice as an Osteopathic Physician license in Alaska can be reinstated, I will have to demonstrate to the Board that I am competent to resume practice, and am able to do so with skill and safety. I understand that during the period my Alaska license is suspended I must remain in compliance with all licensing requirements as required under Alaska Statute (AS) 08.64. If I make such a request for reinstatement of my license and I am denied by the Board, I have the right to a hearing, pursuant to AS 44.62 of the Administrative Procedures Act (APA).

I am surrendering my medical license of my own free will. I am not under the influence of any medicine or other drugs that would affect my ability to think clearly and rationally. No promises or threats have been made to me by anyone to make me sign this document.

_____                    02 Feb 2017
Jordan H. Greer                                     Date

SUBSCRIBED AND SWORN TO before me this ___2___ day of __FEBRUARY__, 2017, at __ANCHORAGE__, Alaska.

                      SEAL                           _____
                                                     Notary Public

AGB                                                  JEE LUIS O CASTILLO
                                                     Notary Printed Name
                                                     My commission expires: __6/6__

Voluntary Suspension of License
GREER, Jordan
Case No. 2016-000255

State of Alaska
Department of Commerce, Community & Economic Development
Division of Corporations, Business and Professional Licensing
550 West 7th Avenue, Suite 1500
Anchorage, Alaska 99501-3567
(907) 269-8160 Fax (907) 269-8195



PLAINTIFF'S EXHIBIT 3

1
2
3
4
5

**STATE OF ALASKA**
**DEPARTMENT OF COMMERCE, COMMUNITY & ECONOMIC DEVELOPMENT**
**DIVISION OF CORPORATIONS, BUSINESS AND PROFESSIONAL LICENSING**
**BEFORE THE ALASKA STATE MEDICAL BOARD**

6   In the Matter of:                                          )
7                                                              )
8   Jordan H. Greer, DO                                        )
9                                                              )
10  Respondent                                                 )
11  Case No. 2016-000255

12                              **ORDER**

13

14          The Alaska State Medical Board, having examined the license surrender of Jordan

15  H. Greer, License# MEDO2266, Case Number 2016-000255, herby adopts the license

16  surrender in this matter.

17          This license surrender takes effect immediately upon signature of this Order in

18  accordance with the approval of the Board.

19          DATED this 3^aD^ day of ___Feb.___, 2017 at ___Anchorage___, Alaska.

20                              ALASKA STATE MEDICAL BOARD

21

22                              BY: _____

23                                            President

24

State of Alaska
Department of Commerce, Community & Economic Development
Division of Corporations, Business and Professional Licensing
550 West 7th Avenue, Suite 1500
Anchorage, Alaska 99501-3567
(907) 269-8160 Fax (907) 269-8195

Voluntary Suspension of License
GREER, Jordan
Case No. 2016-000255